Cheshire,
Feb. 6, 1912.

NEW ENGLAND BOX CO. *v.* PRENTISS *& a.*

Where an owner of lumber, having been wrongfully enjoined from selling the same, applies for an assessment of damages under an injunction bond, he is entitled to recover the difference between the price obtained for the merchandise and the amount he would have received but for the restraining order.

Where a sale of all the timber upon a lot is wrongfully enjoined at the suit of one claiming only a part thereof under a contract of purchase, the owner is entitled to recover for the loss sustained upon the entire amount of lumber by reason of his implicit obedience to the order of the court.

MOTION, for the assessment of damages provided for by an injunction bond.  Trial by the court.  Transferred from the October term, 1910, of the superior court by *Mitchell,* J.  The defendants brought an action of debt upon the bond, which was conditioned "to pay and satisfy all such damages as may be occasioned to said Prentiss & Wilder by reason of said injunction, in case said proceedings in which said injunction was issued should be determined against the New England Box Company."  The court ordered that the original proceeding in which the bond was given be brought forward for the assessment of damages (75 N. H. 605), that action

being a bill in equity which was dismissed upon demurrer. 75 N. H. 246.

March 21, 1907, the plaintiffs and defendants entered into a written contract whereby the plaintiffs agreed to buy and the defendants to sell all the merchantable pine plank on a lot in Rockingham, Vermont, the time, rate, and place of delivery, the character of the lumber, the manner in which it should be sawed, the price, and the time of payment being stipulated in the agreement. Subsequently to the execution of the contract and before January 1, 1908, the following clause, out of which the controversy has arisen, was inserted: "In consideration of the above contract, the said Prentiss & Wilder agree to contract the pine plank on the Richardson lot in Westmoreland at the market price when sawed to the said Box Company."

January 6, 1908, the plaintiffs' secretary wrote the defendant Prentiss, as follows: "Mr. Baker told me recently that you were going to cutting of the Richardson lot from which we were to have the box lumber. I would like to know whether you would like to enter into a contract now, or when the lumber is on sticks, or ready to ship. The understanding on this lot was that we were to have it at the market price; and as nothing was said as to whether it was the market price when the lot was cut or ready to ship, would like to know what your choice would be in the matter." Baker was the plaintiffs' superintendent and buyer. To this letter Prentiss replied on January 8, as follows: "In regard to the Richardson lot, would say we have about two hundred thousand feet, and perhaps it would be well for you to take the matter up before long and come to some definite understanding in the matter. We will attend to this at your convenience." January 11, the plaintiffs' secretary replied: 'Your favor of the 8th received and in reply would say we have written Mr. Baker to see you soon." Shortly afterward Baker met the defendants on the lot, and they informed him that the price was $20 per thousand, that being the amount for which they could sell the lumber. Baker told them he would soon notify them whether the lumber would be accepted at that price.

January 20, 1908, the plaintiffs brought their bill in equity, setting forth the clause of the contract hereinbefore quoted, alleging that 200,000 feet of plank were then sawed, that the plaintiffs were ready and willing to pay the market price, but that the defendants demanded $20 per thousand, which the plaintiffs claimed to be in

excess of the market price, and praying for an injunction to restrain the defendants from selling the pine plank or any of the lumber or timber on said Richardson lot to any person except the plaintiffs; and on that day an injunction was issued restraining the defendants "from selling, conveying, delivering, or otherwise disposing of any of the plank, lumber, or timber described in said petition to any person except the plaintiffs." The defendants understood and were advised by counsel that this injunction restrained them from disposing of any timber upon the Richardson lot. July 24, 1908, the injunction was modified so as to permit the defendants to dispose of all lumber and timber the sale of which had been previously enjoined, except such as would naturally and properly be sawed into pine plank in the operation of the lot. As a result of the interpretation put upon the injunction by the defendants and their counsel, they did not remove any of the timber until after the modification of the injunction. While the injunction was pending, by agreement and without prejudice to the rights involved, the plaintiffs received all the pine plank sawed on the lot (544,310 feet) and paid therefor $18 per thousand.

The court ruled that the clause inserted in the contract of March 21, 1907, was an option to purchase the pine plank on the Richardson lot at the market price, and found that the plaintiffs elected to exercise this option before filing the bill in equity, that in January, 1908, the market price in the vicinity of Westmoreland for timber of this kind and quality for future delivery was $20 per thousand feet, and that the defendants could have sold the timber at that price. Although the defendants could have sold the timber in question at that price, the plaintiffs about that time purchased in Massachusetts and in some other towns in New Hampshire several million feet of similar timber for $18 per thousand. The market price for such plank in Westmoreland continued at $20 per thousand until about September 1, 1908; but of the plank cut on the Richardson lot, 181,436 feet were actually sawed after September 1, when the market price was about $18 per thousand. The court found the defendants entitled as damages under the bond to $2 per thousand on 544,310 feet ($1,088.62), with the proviso that if the market price contemplated by the contract was the market price when the plank were actually sawed, instead of the time when the plaintiffs exercised the option to purchase, there should be deducted from this sum of $1,088.62 the sum of $362.87 on account of 181,436 feet sawed after September 1, when the market price

was only $18 per thousand; and that if the defendants were as matter of law restrained by the injunction as first issued from taking from the lot the timber thereon other than pine plank, or were justified in so interpreting the injunction, they should be allowed $237 for loss caused by delay in its sale and expense of moving it. Other items of damage allowed made a total of $1,727.42.

One of the defendants' witnesses, who qualified as an expert, testified that the market price of pine box-plank in January, 1908, was $20 per thousand. It being claimed by the defendants that the original injunction prevented the removal of railroad ties from the Richardson lot and that they suffered damage from the delay, another witness was permitted to testify as to the price of ties in 1908, prior to the granting of the injunction and after its modification. The testimony of both witnesses was received subject to the plaintiffs' exception. The plaintiffs also excepted to the denial of their motion for judgment, to each special finding, and to the denial of their motion for judgment upon each item of the defendants' claim.

*Archibald D. Flower* (of Massachusetts) and *Cain & Benton*, for the plaintiffs.

*John E. Allen* and *Charles H. Hersey*, for the defendants.

PARSONS, C. J. The plaintiffs secured an injunction which prevented the defendants from selling certain pine plank to any one other than the plaintiffs. Not being permitted to sell to any other, the defendants sold the plank to the plaintiffs for $18 per thousand, with the agreement, however, that such sale should not prejudice their rights in this proceeding. If the plaintiffs paid the defendants as much as they could have obtained from others, although the injunction was improvidently issued the defendants' damages would be merely nominal. But it is found that but for the injunction the defendants could have sold the plank to others for $2 per thousand more than the plaintiffs paid; and as upon the evidence it could have been found that they would have made such sale except for the injunction, the finding that they have been damaged by the issuance of the injunction $2 per thousand upon 544,310 feet, the amount cut on the lot, all of which the plaintiffs received, presents no error of law.

In the present proceeding, the contract alleged by the plaintiffs

as the foundation of the proceedings which have been decided against them is immaterial. The measure of damages is not the difference between what the defendants did receive and what they would have received of the plaintiffs under the contract, but the difference between what they did obtain and what they could have received but for the injunction. It has been decided in this case that the defendants could not be compelled to sell the plank to the plaintiffs. *New England Box Co.* v. *Prentiss,* 75 N. H. 246. By that decision all parties to the present proceeding are bound. *Towle* v. *Towle,* 46 N. H. 431. As the defendants could not be compelled to sell the plank to the plaintiffs, the sum they would have been obliged to accept for it if compelled to so sell it can have no bearing on the question of the damages occasioned by the wrongful prevention of such sale to others. As the defendants had the right to sell to others, they had the right to such price as they could obtain from them. The foundation of this proceeding is the wrong in granting the injunction. That wrong could not be cured by the trial and conclusion in favor of the plaintiffs of the question already conclusively determined against them.

The decision upon demurrer (75 N. H. 246) left open the question whether the plaintiffs could recover damages of the defendants for the breach of an agreement to contract the plank to the plaintiffs. If upon appropriate pleadings the defendants could have recouped such damages in this proceeding, no attempt has been made to do so or to show any damages. Assuming that the defendants, instead of performing a valid contract to sell to the plaintiffs, had sold to others at a higher price, the measure of the plaintiffs' damages would not be the difference between the price agreed and the price the defendants obtained, but the difference between the agreed price and the price the plaintiffs might be obliged to pay others to obtain the same material. Ordinarily this would be the difference between the agreed price and the market price; and as the agreed price was the market price, if there is a market where the price was established in which such material could be obtained it would seem, as already suggested, that the plaintiffs could supply their wants in the market (75 N. H. 247), and the only ground of damages would be the possible disturbance of their business by delay. But the plaintiffs have had the plank, and claim they could buy and were buying from others at $18—the price they were willing to pay the defendants. There seems no ground upon which damages could be claimed under the circumstances disclosed.

The defendants were enjoined from selling "any of the plank, lumber, or timber described in said petition to any person." In the petition the plaintiffs asked for an injunction restraining the defendants from selling the pine plank "or any of the lumber or timber on said Richardson lot to any person." Naturally, the defendants understood that the injunction, by reference to the petition which mentioned all the lumber and timber on the Richardson lot as the matter to which the injunction should relate, restrained the defendants from selling any of the lumber or timber on the lot. Such is the plain import of the language. Doubtless with their knowledge of the situation, counsel may have advised the defendants that the injunction was broader than the plaintiffs could properly ask for, as probably they advised them that upon the facts the injunction could not be maintained at all. But the belief of the defendants or their counsel that the plaintiffs were not entitled to the injunction in whole or in part did not authorize them to violate it in any particular. They may not have understood why the plaintiffs thought it necessary to prohibit the removal of any lumber from the lot; but whatever speculations they may have had on this point, they were justified in yielding implicit obedience to the order of the court, and are entitled to recover the loss thereby sustained.

The exceptions to evidence do not require consideration. The damages assessed should be increased by the sum of $237.

*Exceptions overruled.*

All concurred.